T. F. GREEN, SR., ET AL., APPELLEES, V. OLAF H. PARSON
ET AL., APPELLANTS.

FILED NOVEMBER 18, 1925.   No. 23368.

Evidence outlined in the opinion, and *held* to support the decree
entered by the trial court.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*J. A. Sullivan* and *W. W. Slabaugh,* for appellants.

*Dolezal, Spear & Mapes, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD,
THOMPSON and EBERLY, JJ.

MORRISSEY, C. J.

This is a suit brought to foreclose a real estate contract.
From a decree in favor of plaintiffs, defendants Parson
have appealed.

On and prior to May 22, 1919, plaintiffs T. F. Green,
Sr., and R. M. Erway, were the owners of an eighty-acre
tract of farm land in Douglas county.   On the day men-
tioned, plaintiffs entered into an executory contract in writ-
ing with one Harry Adams, whereby they sold and agreed
to convey to Adams the land mentioned for the sum of
$12,000.   At the making of this contract, Adams paid plain-
tiffs $500 in cash, and obligated himself to pay $1,000 March
1, 1920, $1,500 March 1, 1921, and $2,000 March 1, 1922.
"The balance of $7,000 to be paid in seven annual payments
on March 1 of $1,000 each.   All deferred payments to
bear interest from March 1, 1920, at 6 per cent. per annum
payable annually." January 26, 1920, Adams sold and as-
signed his interest in and to the contract to defendant Olaf
H. Parson, and the plaintiffs entered their written consent
to the assignment upon the contract.

In effecting the sale of the property by plaintiffs to
Adams, the Farmers State Bank of Valley, through T. F.
Green, Jr., acted as agent for plaintiffs, and the initial pay-

ment was made to that bank. Adams subsequently employed the bank as his agent, and through that bank the sale of Adam's interest in the real estate and his rights under the contract were sold to defendant Parson. At the time of the sale to Parson, he paid to the bank, or its cashier, T. F. Green, Jr., $3,500 to be applied on the purchase price of the land, and Parson executed his promissory notes for different amounts and due at different periods, payable to plaintiffs, in the gross sum of $10,500. The bank, which was acting as agent for Mr. Adams, paid over or placed to the credit of Adams $2,500 and credited plaintiffs with the sum of $1,000. It is said that this $1,000, placed to the credit of plaintiffs, covered the payment of the sum which, under the terms of the contract, would have fallen due March 1, 1920. Defendant Parson went into possession of the premises and subsequently paid his two notes of $750 each, payable to plaintiffs, representing the amount which under the terms of the contract fell due March 1, 1921. Thereafter defendant Parson failed to make further payments, and this suit was brought in a court of equity to foreclose his interest in the land. In answer to plaintiff's petition, defendant alleged that he had purchased the rights of Adams under the contract and agreed to pay therefor only the sum of $12,000, that being the amount for which Adams had originally purchased the property from plaintiffs, and that of this amount he had already paid a total of $5,000, to wit, $3,500 paid at or about the time the assignment of the contract was made, and the payment of his two notes aggregating $1,500 on or about March 1, 1921. He also alleged that false and fraudulent representations had been made to him as to the value of the farm, and alleged his damage in that regard to be $2,400, and prayed that a decree might be entered accordingly.

Defendant Parson's contention is that the whole sum of $3,500 which he paid to the bank, or to its cashier, should have been applied and used so as to reduce his debt to $8,500, whereas this money was in fact so applied that Adams received $2,500, giving him a net profit on his deal

of $2,000, and only $1,000 was applied to the reduction of the debt due plaintiffs.

There is a direct dispute in the evidence as to the price at which defendant Parson purchased the land from Adams. Parson testified directly that they agreed upon a price of $150 an acre, or a total of $12,000, while Adams and the banker who negotiated the sale testified directly that the price agreed upon was $175 an acre, or a gross sum of $14,000. It will be seen that, even on the oral testimony, the evidence seems to preponderate against Parson. In addition to this, the promissory notes which he executed and the $3,500 in cash which he paid aggregate $14,000. To this circumstance may be added the fact that more than a year later he paid the notes aggregating $1,500, and that it was not until notes maturing March 1, 1922, were about to fall due that he raised any question about the amount which he had agreed to pay, or about the application of the money which he had paid into the bank at the time of making the contract. A consideration of the evidence would constrain us to hold, if indeed it be material to the issues here, that the price agreed upon between Mr. Adams and defendant Parson was $14,000.

In support of defendant Parson's cross-petition, there is evidence to show that the land is not, and was not, at the time of sale, worth the amount stipulated in the contract, and that in some particulars the ground is of inferior quality. On the other hand, plaintiffs have offered evidence on this issue calculated to show that, at the time plaintiffs sold the land to Adams and when Adams sold his rights in the contract to Parson, the land was reasonably worth, on the market, $150 to $175 an acre, or a gross sum of $12,000 or $14,000. However, it is hard to see how this issue can be material here. It was the theory of defendant Parson that there was a conspiracy between plaintiffs, Adams, and the bank, or its cashier, to sell this land to him, and that the sale of the contract was in fact made by plaintiffs, and not by Adams. There is, however, a total failure of proof to support this theory. The record shows without sub-

stantial contradiction that plaintiffs made a *bona fide* sale to Adams; that they were not interested in the sale which Adams subsequently made to Parson; that at all times plaintiffs stood upon the terms of their contract; and that, if any misrepresentations were made by Adams, or the bank, they were wholly without the authority and without the knowledge of plaintiffs. Indeed, there is no convincing evidence of misrepresentations having been made. Mr. Parson had lived and farmed in the immediate vicinity of the land for more than 40 years and probably had a fuller knowledge of its character and value than did the young banker who was acting as the agent for Adams. Furthermore, there is a total lack of evidence in this record to show that, even if deceit and fraud were practiced, plaintiffs are answerable for it. If Adams or his agent, the bank, misapplied the money which Parson paid upon the making of the assignment, Parson must look to them, not to plaintiffs who were not parties to the transaction.

Complaint is made of the form of the judgment, it being thought that it is intended to fix a personal responsibility upon Mrs. Parson, wife of Olaf H. Parson, but this criticism is not merited. A sale under the decree will simply extinguish any interest she has in the land by virtue of her status as the wife of Olaf H. Parson. The decree expressly reserves the question of the right to a deficiency judgment for the consideration of the court after there is a return made to the order of sale. And as Mrs. Parson is not a party to the contract and as the notes signed by her do not bind her separate estate, we see no error in the form of the judgment.

The judgment of the district court is fully sustained, and it is

AFFIRMED.